## ALEXANDER v CITY OF DETROIT

1. MUNICIPAL CORPORATIONS—GARBAGE ORDINANCE—CONSTITUTIONAL LAW.

   A waste collection and disposal ordinance that offers to owners of multiple dwellings of more than four units, with certain exceptions, the options of private contract, private disposition, or the service offered by the city at the price established by the ordinance is not unconstitutional; plaintiff owners of such multiple dwellings could not possibly be the victims of discrimination in classification or discriminatory enforcement unless they opted for the offered municipal service, and having made their choice they cannot be heard to complain.

2. MUNICIPAL CORPORATIONS—CLASSIFICATION—REASONABLENESS—APPEAL AND ERROR.

   The Court of Appeals does not conceive it within its judicial competence to hold that four is discriminatory and six is not; therefore, the Court of Appeals will not find classification arbitrary, capricious, or fanciful that establishes the applicability of a commercial waste collection and disposal ordinance to multiple dwellings of more than four units, because somewhere the municipal legislative authority must draw a numerical line albeit within reasonable limits.

3. MUNICIPAL CORPORATIONS—GARBAGE ORDINANCE—EXCLUSIONS—CONDOMINIUMS AND COOPERATIVES.

   The exclusion by a city of condominiums and cooperatives from a waste collection and disposal ordinance that applies to multiple dwellings of more than four units was not within a rational and reasonable basis, because condominiums and cooperatives are individually or cooperatively owned single residential units falling within the classification of single-unit dwelling places, and the distinction is not invidious, arbitrary, or discriminatory.

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 462.

[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 105 *et seq.*

Appeal from Wayne, George T. Martin, J. Submitted Division 1 December 12, 1972, at Detroit. (Docket No. 12491.) Decided February 21, 1973. Leave to appeal granted, 389 Mich 816.

Complaint by Shirley Alexander for herself and as a member of the class of all taxpayers in the City of Detroit who own multiple dwellings of more than four units against the City of Detroit and its commissioner of public works, commissioner of health, commissioner of police, commissioner of buildings and safety engineering, and corporation counsel to have a waste collection and disposal ordinance found unconstitutional. Practical Home Builders, Inc., Golf View Manor, Inc., and Samuel Mazell intervened as plaintiffs. Motion to have the collected fees segregated and invested granted. Judgment for plaintiffs. Defendant City of Detroit appeals. Plaintiffs cross appeal. Reversed, the class action dismissed, and the order segregating the fees vacated.

*Katz, Victor & Yolles,* for plaintiffs.

*Barris, Sott, Denn & Driker* and *Lampert & Fried,* for intervening plaintiffs.

*Michael M. Glusac,* Corporation Counsel, and *John F. Hathaway, Maureen P. Reilly,* and *Ronald Zajac,* Assistants Corporation Counsel, for the City of Detroit.

Before: QUINN, P. J., and V. J. BRENNAN and O'HARA,* JJ.

O'HARA, J. The question presented is one of constitutional law. The specific enactment involved

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

is an ordinance of the City of Detroit. Plaintiffs below, appellees and cross-appellants here, contend the ordinance is unconstitutional under two well-settled principles. First they complain that the ordinance as drawn is arbitrary and discriminatory in the classifications contained therein thus denying them the equal protection of the law. Second they argue that should we find the classifications are reasonable but the ordinance as enforced is discriminatory, it is as infirm constitutionally as an ordinance which by its own terms is unconstitutional. Additionally, say appellees, even though the classifications are proper and the enforcement nondiscriminatory the ordinance is not a valid exercise of the police power but rather it is a revenue measure only clothed in the garb of the police power and as such it requires a method of enactment different from one which is in fact an exercise of the police power.

Not so says appellant city. The ordinance is in law and in fact a valid exercise of the police power and not a revenue measure. Its classification and exemptions are reasonable and based upon studies and sound legislative judgment. The enforcement, the city alleges, is not discriminatory as to the challenging parties and affords no basis for *their* complaint as to the claimed discriminatory enforcement.

We believe this distillation of the enumerated assignments of error encompasses all the controlling principles of constitutional law.

We note at the outset the route chosen by plaintiffs is not the conventional frontal attack upon an ordinance. Nor indeed could it be. There are no sanctions imposed by it. This immediately distinguishes this case from that immense body of law governing enactments which impose fines,

confinements, denial of licenses, or other affirmative sanctions. Second, we note that in order to be adversely affected by the ordinance, plaintiffs first had to *choose* to come within its terms. The point is fundamental and should be kept in mind as we proceed with the decisional process.

We mentioned above that the attack on the ordinance is not frontal. Rather it is oblique. The challenge comes to us in the nature of an asserted class action and the relief sought is really in the nature of money damages. This is made possible because in the court below plaintiffs sought and obtained an order segregating all the monies collected pursuant to the ordinance, and placing them in an escrow account separate from all other municipal funds with disposition of claims against the account to be made according to the determination of the claimed unconstitutionality. The viscera of the trial judge's holding was that all of the monies collected from the members of the class which plaintiffs claimed to represent were determined to be the "property of plaintiffs and the class" and that the attorneys for plaintiffs be paid a reasonable attorney fee "which this Court [the trial court] shall hereafter determine". The remainder of the monies collected from the members of the class was to be remitted to the members of the class "in such manner as this court [the trial court] may hereafter order".

It would seem that our first step should be to set forth herein for examination this *rara avis* which is the subject of this somewhat unusual constitutional challenge.

It has to do with an amendment to the Code of the City of Detroit to define "commercial waste and [to] provide for the collection thereof". As relevant here we set it forth.

"Sec. 25-1-1. For the purposes of this article, the following words and phrases shall have the meanings respectively ascribed to them by this section:

\* \* \*

"Commercial Waste. The miscellaneous waste material such as garbage, rubbish and ashes resulting from operation of business enterprises, and institutions and multiple dwellings of more than four units; Provided, however, that the term multiple dwelling shall not include condominiums and cooperatives. Such term includes construction waste, but excludes trade waste.

\* \* \*

"Domestic Waste. The waste material resulting from the usual routine of housekeeping except from multiple dwellings of more than four units. Such term includes garbage, rubbish and ashes.

\* \* \*

"Sec. 25-1-29. The department of public works shall collect garbage and rubbish from a commercial establishment, and other commercial waste subject to payment therefor as provided in this article; Provided, however, that upon petition by any non-profit or limited dividend federally subsidized housing development for low to moderate income families, or by a bona-fide nonprofit, charitable or eleemosynary organization, the Common Council may reduce or waive the collection of the charges specified hereunder. *Nothing contained in this article shall be construed to prohibit the party responsible for creating commercial waste from entering into a contract with an authorized private collector or otherwise disposing of such waste, provided it is stored and disposed of in such a manner as to create no nuisance.*"

We added the emphasis above to relate what we mentioned earlier, that in order to be adversely affected by the ordinance plaintiffs had to choose to come within its terms voluntarily. Were it not for the possibility of remand to us for determination of other issues raised we would dispose of the case upon the basis of the italicized language. In

reality all the ordinance amounts to is an offer to perform a service which sometimes municipal residents are *required* to accept at an established price. That same service is often contracted out by the same municipalities. In other cases residents may arrange privately for disposition under any terms so long as the disposition accords with reasonable requirements of municipal sanitation and applicable statutory minima.

In the case at bar plaintiffs had the options of private contract, private disposition, or the service offered by the city at the price established by the ordinance. Plaintiffs could not possibly be the victims of alleged discrimination in classification or discriminatory enforcement unless they opted for the offered municipal service. Having made their choice they cannot be heard to complain. Under a mandate to accept municipal disposition their status might well be different. For the foregoing reason we reverse the trial court, vacate the order of segregation of the monies collected, and direct that they be released to appellant city for disposition in whatever manner the relevant municipal provision prescribes.

We now address ourselves to the claimed arbitrary classifications. We find none. Regulation of an ordered society must sometimes, because of the nature of things, depend on numbers. We do not conceive it within our judicial competence to hold that four is discriminatory and six is not. Somewhere the municipal legislative authority must draw a numerical line albeit within reasonable limits. We find nothing arbitrary, capricious, or fanciful in setting the number at four units.

Exclusion of condominiums and cooperatives by the city is not without a rational and reasonable basis. The city argues condominiums and coopera-

tives are, in fact, individually or cooperatively owned, single residential units falling within the classification of single unit dwelling places to which the commercial fee base is inapplicable. We find the distinction is not invidious, arbitrary, or discriminatory.

The claimed discrimination by exemption of bona fide nonprofit or federally subsidized housing developments does not merit discussion. The classification basis is manifest.

What does merit discussion and to what plaintiffs are entitled to our judicial answer is the unquestionable fact that though the ordinance provides that waiver or reduction of the collection and disposition fee may be had *upon petition to the Common Council,* the department charged with the responsibility of classification and the collection of the prescribed fee in effect waived the fee departmentally without regard to the petition requirement. The practice was, and if it is continuing remains, improper. The difficulty with applying this established impropriety to plaintiffs' case is that there is no way of determining judicially whether had a petition for waiver or reduction not been granted to, for example, Wayne State University, the university would not have chosen one of the two other methods of waste collection and disposition available to it under the ordinance. There was some proof adduced by the city that certain premises on units to which the fee was applicable chose private contract at a cost less than provided by the ordinance.

We inevitably come back to what we noted initially. This ordinance is at best an offer of municipal service on a fee base set by the city by a rather simple but not totally irrational basis applying a computed charge of $.25 per bushel to

units having one type of waste storage device and $.35 per bushel for multiple dwellings of five or more units which utilized a concrete receptacle storage system.

The formula may well be subject to mathematical refutation. It may be poor municipal judgment. It is not in our view that kind of classification which does not bear a reasonable relationship to the object of the legislation.

What now of plaintiffs' contention that this is not an exercise of police power but a revenue-raising device wearing the costume of police-power-permitted legislation? That it was in part intended to recover part of the cost of the service rendered by the city cannot be disputed. The city's representatives, or at least one of them, quite candidly conceded that was part of its purpose. The city was seeking to reclaim some of the cost for the service offered and performed. We do not consider this a pure revenue measure. It might well become one if the city imposed the terms of the ordinance upon all municipal residents, and it were shown that the charge did not bear a reasonable relationship to the service rendered. We have taken into consideration the presumption of validity that is so well recognized that to discuss it is mere legal verbiage. The burden was upon the plaintiffs below—not the city.

It is to be noted that we have included no excerpts from the record nor citations from case precedent in this opinion. It is intentional. As our case load constantly increases, so perforce does the number of opinions. Brevity becomes more and more essential. In a case such as this which involves settled principles, lengthy excerpts from other cases is of little benefit to the trial bench or the profession. The same is true of quotations from the trial record.

For the benefit of those who may want research assistance we append a list of cases from the excellent briefs of both parties and others from our own research.

For the reasons herein discussed we reverse the trial court. We vacate the order segregating the fees collected. The class action is dismissed on the merits. Appellant city may tax costs.

All concurred.

## *APPENDIX*

The equal protection clause does not take from the state the power to classify under the police power, but recognizes a wide scope of discretion in that regard, and invalidates what is done only if it is without any reasonable basis and therefore is wholly arbitrary. *Naudzius v Lahr,* 253 Mich 216 (1931).

The classification of objects to which municipal ordinances may be made applicable must be based on natural characteristics and bear a reasonable relation to the object of the ordinance. *Land v Grandville,* 2 Mich App 681 (1966).

When a classification has some reasonable basis it does not contravene the equal protection clause merely because the lines drawn are not mathematically precise or because there is some inequality. *Naudzius, supra.*

In the realm of social and economic legislation, the Supreme Court recognizes that the Legislature has great latitude in making classifications. *Levy v Louisiana,* 391 US 68; 88 S Ct 1509; 20 L Ed 2d 436 (1968).

Courts will not invalidate a legislative classification merely because they disagree as to the propriety of the classification and the sufficiency of

the grounds upon which it is based. *Tribbett v Village of Marcellus,* 294 Mich 607 (1940).

Courts strike down a legislative classification only if it is clearly unreasonable and arbitrary. *Ver Hoven Woodward Chevrolet, Inc v Dunkirk,* 351 Mich 190 (1958).

In the absence of clear evidence to the contrary, courts assume that a legislative body acted upon facts which justify the classification as reasonable and proper. *People's Appliance, Inc v Flint,* 358 Mich 34 (1959).

Every presumption is indulged in favor of an enactment's validity and it will be declared unconstitutional only if clearly invalid, or beyond a reasonable doubt. *Ver Hoven, supra; In re Phillips,* 305 Mich 636 (1943).

So long as a distinction in legislation · is not arbitrary, if any state of facts reasonably can be imagined that would sustain it, the existence of those facts at the time the law was enacted must be assumed. *Lake Shore Coach Lines, Inc v Secretary of State,* 327 Mich 146 (1950); *In re Phillips, supra.*

The equal protection clause protects against invidious and arbitrary discrimination whether the result of the express terms of the legislative enactment or by its unreasonable enforcement through duly constituted agents. *General Oil Co v Crain,* 209 US 211; 28 S Ct 475; 52 L Ed 754 (1908); *Norris v Alabama,* 294 US 587; 55 S Ct 579; 79 L Ed 1074 (1935); *Williams v Mississippi,* 170 US 213; 18 S Ct 583; 42 L Ed 1012 (1898); *Yick Wo v Hopkins,* 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886).

Classifications based on numbers do not necessarily violate the equal protection clause. *New York ex rel Bryant v Zimmerman,* 278 US 63; 49 S

Ct 61; 73 L Ed 184; 62 ALR 785 (1928); *Herbring v Lee,* 280 US 111; 50 S Ct 49; 74 L Ed 217; 64 ALR 1430 (1929); *Miller v Strahl,* 239 US 426; 36 S Ct 147; 60 L Ed 364 (1915).

The exemption of nonprofit institutions and similar organizations serving the general public from service charges need not necessarily contravene any constitutional proscription. *Preston v Board of Water Commissioners of Detroit,* 117 Mich 589 (1898); *Lucking v People,* 320 Mich 495 (1948); *Rockwell Co v Romulus Twp,* 365 Mich 632 (1962).

Municipalities are vested with broad discretion in deciding whether to provide particular services to the populace, in determining the amount and character of the service, and the parties to be serviced. *Anderson v Philadelphia,* 348 Pa 583, 36 A2d 442 (1944); *Mayor of Baltimore v Hampton Court Co* 138 Md 271; 113 A 850 (1921); *People ex rel Webster v Chicago,* 277 Ill 394; 115 NE 570 (1917); *Leroy Franz, Inc v New Rochelle,* 124 NYS2d 525 (1953).

The fact a municipality may derive a profit from consumers in the course of providing a public service does not automatically make it an illegal tax. *Preston, supra.*