WYSOCKI v FELT

Docket No. 221989. Submitted May 23, 2001, at Marquette. Decided November 20, 2001, at 9:00 A.M.

Patrick Wysocki brought an action in the Keweenaw Circuit Court against Kenneth Felt (personal representative of the estate of David Felt), Ruth Kivi, and Mark Sutinen, alleging premises liability by David Felt and Kivi and negligence by Sutinen relative to the plaintiff's injury in a fall from a deck constructed by Sutinen on premises owned by Kivi and leased to David Felt. At trial, the jury was instructed on MCL 600.2955a, which provides that it is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance and, as a result of that impaired ability, the individual was fifty percent or more the cause of the accident or event that resulted in the death or injury. Section 2955a further provides that if the individual was less than fifty percent the cause of the accident or event, an award of damages shall be reduced by that percentage. After completing a jury verdict form that asked the jurors, first, whether the plaintiff had an impaired ability to function due to the consumption of alcohol and, second, whether the plaintiff's impaired ability to function was fifty percent or more the cause of the accident that resulted in his injury, and after heeding a direction in the jury verdict form not to answer further questions on the jury verdict form if the jury answered yes to the second question, the jury returned a verdict of no cause of action. The plaintiff appealed.

The Court of Appeals held:

1. Section 2955a and the jury instructions based thereon in this case do not violate due process as guaranteed by US Const, Am XIV and Const 1963, art 1, § 17. The statute, in applying contributory negligence principles to bar recovery by intoxicated plaintiffs who are fifty percent or more at fault and in applying comparative negligence principles to reduce recovery by intoxicated plaintiffs who are less than fifty percent at fault, is not arbitrary or capricious inasmuch as it is rationally related to the legitimate govern-

mental objective of allocating tort responsibility more heavily on those who are at fault.

2. Section 2955a and the jury instructions based thereon in this case do not violate equal protection as guaranteed by US Const, Am XIV and Const 1963, art 1, § 2. Plaintiffs with impaired ability to function due to liquor or controlled substances and plaintiffs with impaired ability to function due to causes other than liquor or controlled substances are not similarly situated so as to give rise to equal protection concerns. Even if these two classes of plaintiffs were similarly situated, the statute would still not violate equal protection inasmuch as it would be rationally related to the legitimate governmental interest of increasing the responsibility of intoxicated or drug-influenced tort plaintiffs by reducing or barring their recovery.

3. The jury instructions and the jury verdict form, in directing the jury to consider whether the plaintiff's impaired ability to function was "the" cause of the accident rather than "a" cause or proximate cause of the accident, did not violate due process or equal protection. Section 2955a, on which the instructions and the verdict form were based, abrogated common-law comparative negligence and the attendant standard jury instructions on proximate cause with respect to intoxicated plaintiffs.

4. The plaintiff was not denied his right to a jury trial when the jury, after determining that the plaintiff was fifty percent or more the cause of the accident, did not further decide damages and comparative fault. Section 2955a abrogated common-law comparative negligence, thus making issues of damages and comparative negligence moot in this case.

Affirmed.

1. Negligence — Death — Injury to Person or Property — Intoxicated Plaintiffs — Constitutional Law — Due Process.

The statute that bars recovery in actions for death or for injury to person or property by plaintiffs who, at the time of the accident or event that resulted in death or injury, had impaired ability to function due to the influence of intoxicating liquor or a controlled substance and was fifty percent or more the cause of the accident or event, and that reduces recovery of damages by plaintiffs less than fifty percent the cause of the accident or event by that percentage, does not violate due process; the statute is not arbitrary or capricious and is rationally related to the legitimate governmental objective of allocating tort responsibility more heavily on those who are at fault (US Const, Am XIV; Const 1963, art 1, § 17; MCL 600.2955a).

2. NEGLIGENCE — DEATH — INJURY TO PERSON OR PROPERTY — INTOXICATED
   PLAINTIFFS — CONSTITUTIONAL LAW — EQUAL PROTECTION.

   The statute that bars recovery in actions for death or for injury to per-
   son or property by plaintiffs who, at the time of the accident or
   event that resulted in death or injury, had impaired ability to func-
   tion due to the influence of intoxicating liquor or a controlled sub-
   stance and was fifty percent or more the cause of the accident or
   event, and that reduces recovery of damages by plaintiffs less than
   fifty percent the cause of the accident or event by that percentage,
   does not violate equal protection; the statute does not create simi-
   larly situated classes that give rise to equal protection concerns
   between plaintiffs impaired by liquor or controlled substances, for
   whom tort recovery is denied or curtailed, and plaintiffs impaired
   by causes other than liquor or controlled substances, for whom tort
   recovery is not denied or curtailed (US Const, Am XIV; Const 1963,
   art 1, § 2; MCL 600.2955a).

*David M. Gemignani*, for Patrick Wysocki.

*Garan Lucow Miller, P.C.* (by *Rosalind Rochkind*),
for Kenneth Felt.

Before: SAWYER, P.J., and SMOLENSKI and WHITBECK,
JJ.

WHITBECK, J. Plaintiff Patrick Wysocki appeals as of
right a jury verdict of no cause of action. Wysocki
sued defendants, alleging negligent design and con-
struction and premises liability after he suffered inju-
ries when, while intoxicated, he broke through a deck
railing and fell. The jury found that Wysocki was fifty
percent or more at fault because of intoxication, bar-
ring his recovery under MCL 600.2955a. We affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

The parties have entered into a stipulated state-
ment of facts for the purposes of this appeal, a prac-
tice that we strongly encourage and for which we
commend them. We summarize those facts here. In

mid-May of 1997, Wysocki was injured while on premises owned by Ruth Kivi and leased by David Felt. Wysocki's injury involved a home deck and railing that was constructed in 1993 on those premises. Specifically, Wysocki was leaning on the railing, which had been constructed in 1993 by carpenter Mark Sutinen at the request of Kivi. Apparently, the railing gave way. At the time of the accident, Wysocki had a blood alcohol content of 0.21 percent.

Wysocki sued Kivi on a premises liability theory, Felt on a premises liability theory, and Sutinen on a negligence theory. The case went to trial in early August of 1999. Defendants proposed a jury instruction to the trial court, based on the intoxication statute.[1] The intoxication statute reads as follows:

> It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was [fifty percent] or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than [fifty percent] the cause of the accident or event, an award of damages shall be reduced by that percentage.[2]

---

[1] MCL 600.2955a(1).

[2] MCL 600.2955a(2)(b) defines "impaired ability to function due to the influence of intoxicating liquor or a controlled substance" as meaning that,

> as a result of an individual drinking, ingesting, smoking, or otherwise consuming intoxicating liquor or a controlled substance, the individual's senses are impaired to the point that the ability to react is diminished from what it would be had the individual not consumed liquor or a controlled substance. An individual is presumed under this section to have an impaired ability to function due to

The first question on the verdict form was "Did [Wysocki] have an impaired ability to function due to the consumption of alcohol?" The second question on the verdict form read, "Was [Wysocki's] impaired ability due to the influence of intoxicating liquors [fifty percent] or more the cause of the accident that [Wysocki] claims resulted in his injury?" and "If your answer is yes, do not answer any further questions." The jury answered "yes" to each of these questions and returned a no cause of action verdict. Wysocki now appeals.

## II. EQUAL PROTECTION AND DUE PROCESS

### A. OVERVIEW

The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law.[3] In this regard, the Michigan and federal Equal Protection Clauses offer similar protection.[4] This constitutional guarantee requires that persons similarly situated be treated alike.[5] Indeed, this Court has held that the

influence of intoxicating liquor or a controlled substance if, under the standard prescribed by section 625a of the Michigan vehicle code, Act No. 300 of the Public Acts of 1949, being section 257.625a of the Michigan Compiled Laws, a presumption would arise that the individual's ability to operate a vehicle was impaired.

[3] See US Const, Am XIV; Const 1963, art 1, § 2.

[4] *Doe v Dep't of Social Services*, 439 Mich 650, 670-671; 487 NW2d 166 (1992).

[5] *Royster Guano Co v Virginia*, 253 US 412, 415; 40 S Ct 560; 64 L Ed 989 (1920); *El Souri v Dep't of Social Services*, 429 Mich 203, 207; 414 NW2d 679 (1987).

equal protection provisions of the federal and state constitutions are coextensive.[6]

Conversely, however, the federal constitution does not require things that are different in fact or opinion to be treated in law as though they were the same.[7] Stated differently, the courts have not interpreted the federal constitution to require "absolute equality." Similarly, it is well established that the equal protection guarantee is not a source of substantive rights or liberties; rather, it is a measure of our constitutions' tolerance of government classification schemes.[8] We review due process claims similarly to equal protection claims.[9]

### B. STRICT SCRUTINY

When state legislation creates a classification scheme that is based on suspect factors, such as race,[10] national origin,[11] ethnicity or alienage,[12] or that

---

[6] *Neal v Oakwood Hosp Corp*, 226 Mich App 701, 716; 575 NW2d 68 (1997); *People v McFall*, 224 Mich App 403, 413; 569 NW2d 828 (1997).

[7] *Jefferson v Hackney*, 406 US 535, 549; 92 S Ct 1724; 32 L Ed 2d 285 (1972); *Reed v Reed*, 404 US 71, 75; 92 S Ct 251; 30 L Ed 2d 225 (1971); *Tigner v Texas*, 310 US 141, 147; 60 S Ct 879; 84 L Ed 1124 (1940).

[8] *Doe, supra* at 661, citing *San Antonio Independent School Dist v Rodriguez*, 411 US 1, 58; 93 S Ct 1278; 36 L Ed 2d 16 (1973) (Stewart, J., concurring).

[9] *Syntex Laboratories v Dep't of Treasury*, 233 Mich App 286, 292; 590 NW2d 612 (1998).

[10] See *American States Ins Co v Dep't of Treasury*, 220 Mich App 586, 592-594; 560 NW2d 644 (1996); see also *Yick Wo v Hopkins*, 118 US 356; 6 S Ct 1064; 30 L Ed 220 (1886); *Strauder v West Virginia*, 100 US 303; 25 L Ed 664 (1880); Bickel, *The original understanding and the segregation decision*, 69 Harv L R 1 (1955).

[11] See *Oyama v California*, 332 US 633; 68 S Ct 269; 92 L Ed 249 (1948); *American States, supra* at 592-594.

[12] See *Nyquist v Mauclet*, 432 US 1, 8, n 9; 97 S Ct 2120; 53 L Ed 2d 63 (1977); *El Souri, supra; Chan v City of Troy*, 220 Mich App 376, 378; 559 NW2d 374 (1996).

affects a fundamental interest,[13] courts apply a high standard of review, labeled "strict scrutiny."[14] When courts review a statute under this strict standard, they uphold the statute only "if the state demonstrates that its classification scheme has been precisely tailored to serve a compelling governmental interest."[15] Courts have rarely sustained legislation under this standard of review.[16] Justice Brennan, writing for the majority, laid out the rationale underlying the strict scrutiny analysis in *Plyler v Doer*:

> Several formulations might explain our treatment of certain classifications as "suspect." Some classifications are more likely than others to reflect deep-seated prejudice rather than legislative rationality in pursuit of some legitimate objective. Legislation predicated on such prejudice is easily recognized as incompatible with the constitutional understanding that each person is to be judged individually and is entitled to equal justice under the law. Classifications treated as suspect tend to be irrelevant to any proper legislative goal. See *McLaughlin v Florida*, 379 US 184, 192; 85 S Ct 283; 13 L Ed 2d 222 (1964); *Hirabayashi v United States*, 320 US 81, 100; 63 S Ct 1375; 87 L Ed 1774 (1943). Finally, certain groups, indeed largely the same groups, have historically been "relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process." *San Antonio Independent School Dist v Rodriguez*, 411 US 1, 28; 93 S Ct 1278; 36 L Ed 2d 16 (1973); *Graham v Richardson*, 403 US 365, 372; 91 S Ct 1848; 29 L Ed 2d 534 (1971); see *United States v Carolene Products Co*, 304 US 144, 152-153, n 4; 58

---

[13] See *Harper v Virginia Bd of Elections*, 383 US 663, 672; 86 S Ct 1079; 16 L Ed 2d 169 (1966); *Neal, supra* at 717-718.

[14] *People v Pitts*, 222 Mich App 260, 273; 564 NW2d 93 (1997).

[15] *Doe, supra* at 662, citing *Plyler v Doe*, 457 US 202, 216-217; 102 S Ct 2382; 72 L Ed 2d 786 (1982).

[16] *Manistee Bank & Trust Co v McGowan*, 394 Mich 655, 668; 232 NW2d 636 (1975).

S Ct 778; 82 L Ed 1234 (1938). The experience of our Nation has shown that prejudice may manifest itself in the treatment of some groups. Our response to that experience is reflected in the Equal Protection Clause of the Fourteenth Amendment. Legislation imposing special disabilities upon groups disfavored by virtue of circumstances beyond their control suggests the kind of "class or caste" treatment that the Fourteenth Amendment was designed to abolish.[17]

## C. THE "TRADITIONAL" OR "RATIONAL BASIS" TEST

The "traditional" or "rational basis" test represents the other polar extreme. Under this standard, courts will not strike down a statute if the classification scheme it creates is rationally related to a legitimate governmental purpose. Justice Stewart articulated the test in *Dandridge v Williams*:

> If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v Natural Carbonic Gas Co*, 220 US 61, 78; 31 S Ct 337; 55 L Ed 369 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co v City of Chicago*, 228 US 61, 69-70; 33 S Ct 441; 57 L Ed 730 (1913). "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *McGowan v Maryland*, 366 US 420, 426; 81 S Ct 1101; 6 L Ed 2d 393 (1961).[18]

---

[17] *Plyler, supra* at 216-217, n 14.

[18] *Dandridge v Williams*, 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970).

In Michigan, courts have applied the rational basis test principally to economic and social legislation.[19] Under the traditional or rational basis test, a classification will stand unless it is shown to be "essentially arbitrary."[20] Stated differently, one who attacks an enactment must show that it is "arbitrary and wholly unrelated in a rational way to the objective of the statute."[21] "Few statutes have been found so wanting in 'rationality' as to fail to satisfy the 'essentially arbitrary' test."[22] Stated positively, the test is that courts must uphold a statutory classification where it is rationally related to a legitimate government purpose.[23] The rational basis test " 'reflects the judiciary's awareness that "it is up to legislatures, not courts, to decide on the wisdom and utility of legislation." ' "[24]

### D. "HEIGHTENED" OR "INTERMEDIATE" SCRUTINY: THE "SUBSTANTIAL RELATIONSHIP" TEST

The Michigan Supreme Court has adopted the United States Supreme Court's definition of "heightened" or "intermediate" scrutiny, which involves the "substantial relationship" test:

Under this level of scrutiny, there are two determinations that must be made. The first question is whether the classi-

---

[19] See *Manistee Bank, supra* at 668.

[20] *Id.*, citing *Lindsley, supra.*

[21] *Smith v Employment Security Comm,* 410 Mich 231, 271; 301 NW2d 285 (1981); see also *In re Kasuba Estate,* 401 Mich 560, 568-569; 258 NW2d 731 (1977); *McAvoy v H B Sherman Co,* 401 Mich 419, 453-454; 258 NW2d 414 (1977).

[22] *Manistee Bank, supra* at 668.

[23] *Doe, supra* at 662; *American States, supra* at 592.

[24] *American States, supra* at 597, quoting *Gronne v Abrams,* 793 F2d 74, 77 (CA 2, 1986), quoting *Ferguson v Skrupa,* 372 US 726, 729; 83 S Ct 1028; 10 L Ed 2d 93 (1963).

fication serves an *important* governmental interest. The second question is whether the classification is *substantially* related to the achievement of the important governmental objective. *Craig v Boren*, 429 US 190, 197; 97 S Ct 451; 50 L Ed 2d 397 (1976), reh den 429 US 1124 (1977).[25]

### E. THE PRINCIPLES OF JUDICIAL DEFERENCE

There is almost universal agreement that the power of the Legislature is not without limits. "[T]hat those limits may not be mistaken, or forgotten, the Constitution is written."[26] And, as the Michigan Supreme Court stated in *Manistee Bank*, "[T]hat those limits not be exceeded, the courts are entrusted with the responsibility to review and the power to nullify legislative acts which are repugnant to the constitution."[27]

Nevertheless, courts are to use this authority sparingly. "[U]nder established rules of statutory construction, statutes are presumed constitutional, and courts have a duty to construe a statute as constitutional unless unconstitutionality is clearly apparent."[28] As the Michigan Supreme Court stated in *Council of Organizations & Others for Education About Parochiaid, Inc v Governor*,[29] "When compelled to make a constitutional pronouncement, the court must do so with great circumspection and trepidation, with

---

[25] *Dep't of Civil Rights ex rel Forton v Waterford Twp Dep't of Parks & Recreation*, 425 Mich 173, 191; 387 NW2d 821 (1986) (emphasis in the original).

[26] *Marbury v Madison*, 5 US (1 Cranch) 137; 2 L Ed 60 (1803).

[27] *Manistee Bank, supra* at 666.

[28] *Mahaffey v Attorney General*, 222 Mich App 325, 344; 564 NW2d 104 (1997).

[29] *Council of Organizations & Others for Education About Parochiaid, Inc v Governor*, 455 Mich 557, 568; 566 NW2d 208 (1997), citing *United States v Raines*, 362 US 17, 21; 80 S Ct 519; 4 L Ed 2d 524 (1960).

language carefully tailored to be no broader than that demanded by the particular facts of the case rendering such a pronouncement necessary." Further:

> The court will not go out of its way to test the operation of a law under every conceivable set of circumstances. The court can only determine the validity of an act in the light of the facts before it. Constitutional questions are not to be dealt with in the abstract.[30]

Indeed, "[t]he party challenging the facial constitutionality of an act 'must establish that no set of circumstances exists under which the [a]ct would be valid. The fact that the . . . [a]ct might operate unconstitutionally under some conceivable set of circumstances is insufficient . . . .' "[31]

Thus, we should presume the intoxication statute to be constitutional unless its unconstitutionality is clearly apparent. Further, in ruling on this constitutional challenge, we should carefully tailor our language to the particular facts of this case. We are not to go out of our way to test the operation of the intoxication statute under every conceivable set of circumstances, nor are we to deal with the constitutional question in the abstract. Rather, we should recognize that the fact that the intoxication statute might operate unconstitutionally under some conceivable set of circumstances is insufficient.

---

[30] *General Motors Corp v Attorney General*, 294 Mich 558, 568; 293 NW 751 (1940).

[31] *Council of Organizations, supra* at 568, quoting *United States v Salerno*, 481 US 739, 745; 107 S Ct 2095; 95 L Ed 2d 697 (1987).

### III. DUE PROCESS

#### A. WYSOCKI'S POSITION

Wysocki argues that jury instructions based on the intoxication statute violate the Due Process Clauses of the United States and Michigan Constitutions. He contends that, in practical terms, applying the rules of comparative negligence to those who are less than fifty percent the cause of an accident, while applying the rules of contributory negligence to those who were fifty percent or more the cause of an accident, is arbitrary and capricious. In connection with his equal protection challenge, Wysocki argues that an intermediate level of scrutiny—the "substantial relationship" test—should be applied to tort recovery actions. He relies on a New Hampshire case, *Carson v Mourer*.[32]

#### B. STANDARD OF REVIEW

We review the constitutionality of statutes de novo.[33]

#### C. *CARSON*

We conclude that Wysocki's reliance on *Carson* is misplaced. In that case, the court was dealing with a statute that required notice provisions and scrutiny of expert witnesses in medical malpractice actions.[34] The New Hampshire Legislature adopted the law to

---

[32] *Carson v Mourer*, 120 NH 925, 929-930; 424 A2d 825 (1980).

[33] *Blank v Dep't of Corrections*, 462 Mich 103, 112; 611 NW2d 530 (2000).

[34] *Carson, supra* at 930.

combat the high costs of litigation in the medical malpractice system.[35] However, the Court did not base its decision on the concept that recovery for injuries is a property right requiring due process protection. Instead, the court reasoned that the New Hampshire state constitution afforded the court latitude to offer more protection than the federal constitution, so the court applied an intermediate scrutiny test, rather than the traditional rational basis test. Further, the court stated that it routinely applied intermediate scrutiny to socioeconomic regulation as well.[36]

However, Michigan's Due Process Clause is construed only as broadly as the federal guarantee.[37] Further, unlike New Hampshire courts, Michigan courts apply rational basis analysis to socioeconomic regulation.[38] Therefore, we conclude that Wysocki's claim is reviewable under the rational basis test in Michigan, regardless of the extra protection he may have been awarded had the tort been committed in New Hampshire. Therefore, the appropriate standard of review is under the rational basis test.

### D. THE LEGISLATURE'S OBJECTIVE

Rather plainly, the intoxication statute sought to place more responsibility on intoxicated plaintiffs who are equally or more to blame for their injuries, therefore marking a shift toward personal responsibil-

---

[35] *Id.*

[36] *Id.* at 932.

[37] *Syntex Laboratories, supra* at 290.

[38] *Stegeman v Ann Arbor*, 213 Mich App 487, 492; 540 NW2d 724 (1995); see also *Odonnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 552; 273 NW2d 829 (1979) (challenged statute must be upheld if it is not arbitrary and is *rationally related* to a legitimate state interest).

ity envisioned by overall tort reform. This legislative intent is clear from the language of the statute itself, which bars recovery for some intoxicated plaintiffs and reduces recovery for other intoxicated plaintiffs.

The 1995 tort reform package was a series of bills that overhauled the tort system in Michigan. To this end, the Legislature enacted several laws that abolished joint and several liability, imposed damages caps on pain and suffering, and—in the intoxication statute—limited intoxicated plaintiffs' recovery.[39]

In deciding if the law is arbitrary or capricious, this Court uses the standards set down by the United States Supreme Court:

> Arbitrary is: "[W]ithout adequate determining principle . . . fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances, or significance . . . decisive but unreasoned."
>
> Capricious is: "[A]pt to change suddenly; freakish; whimsical; humorsome."[40]

Here, the Legislature did not act without consideration of principles or circumstances in enacting the intoxication statute. If a plaintiff is half or more at fault because of that plaintiff's own voluntary intoxication, then shifting the burden from the defendant to the plaintiff who was at least or more responsible aligns with beneficial principles and societal circumstances.

---

[39] See 1995 PA 249, effective March 28, 1996; 1995 PA 161, effective March 28, 1996.

[40] *United States v Carmack*, 329 US 230, 243; 67 S Ct 252, 258; 91 L Ed 209 (1946); see also *Williams v Martimucci*, 88 Mich App 198, 201; 276 NW2d 876 (1979).

### E. DRAWING THE LINE

Wysocki argues that the difference between forty-nine percent and fifty percent is arbitrary. However, the Legislature cannot be restrained to using scientifically exact formulations of individual circumstances:

> Regulation of an ordered society must sometimes, because of the nature of things, depend on numbers. We do not conceive it within our judicial competence to hold that four is discriminatory and six is not. Somewhere the municipal legislative authority must draw a numerical line albeit within reasonable limits.[41]

In attempting to allocate fault to irresponsible drinkers, the Legislature set the number at fifty percent or more. We conclude that the Legislature drew the line within reasonable limits. Further, as we have already noted, statutes are presumed to be constitutional, and the burden is on a plaintiff to show that a statute is arbitrary and capricious.[42] Wysocki has stated that the statute is arbitrary only because it is arbitrary to preclude recovery for those plaintiffs who are fifty percent or more at fault, while only reducing recovery for those who are less at fault. This Court need not address inadequately briefed issues:

> It is not enough for an appellant in his brief simply to announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his arguments, and then search for authority either to sustain or reject his position. The appellant himself must first adequately prime the pump; only then does the appellate well begin to flow.[43]

---

[41] *Alexander v Detroit*, 45 Mich App 7, 12; 205 NW2d 819 (1973).

[42] *People v Sleet*, 193 Mich App 604, 607; 484 NW2d 757 (1992).

[43] *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959).

In any event, we cannot say that the percentage limit was arbitrary, especially considering that the Legislature could have completely barred recovery for any type of intoxicated plaintiff by statutory enactment, and the limitation precluded recovery only for those intoxicated plaintiffs who were at least equally at fault for their injuries. The fifty percent limit is rationally related to the government interest of placing responsibility for tortious conduct by intoxicated or drug-affected persons directly on them. We conclude that the intoxication statute is not violative of due process and, therefore, that jury instructions based on the statute, rather than comparative negligence, were similarly not violative of due process.

### F. THE STANDARD OF FAULT

Wysocki argues that due process requires a standard of fault to be used by the jury when deciding if plaintiff is entitled to damages. He asserts that this standard should be based on the conduct of a "reasonable person" in the same situation. He contends that the statutes encompassing the 1995 tort reform should be read together and that the other statutes enacted at that time required fault; therefore, he contends, the intoxication statute should be interpreted to require fault based on a negligence standard. He concludes that he should be bound only by comparative negligence principles. We do not agree.

Wysocki essentially contends that the only issue should be whether a plaintiff was comparatively negligent, regardless of legislative fiat. However, this Court has previously refused to consider this type of

contention. In *Thompson v Fitzpatrick*,[44] this Court held that the five percent limitation on damages reduction due to the plaintiff's failure to wear a seat belt during a collision was not violative of due process or equal protection. There, the plaintiff's damages were $250,000, half of which were caused when she was thrown from the vehicle because of her failure to wear a seat belt.[45] However, MCL 257.710e limits reduction of damages caused by unbelted driver plaintiffs to five percent. The defendants argued that this limit was applicable only to cases where defendants attempted to limit damages on the basis of violation of the statute, rather than common-law comparative negligence.[46] This Court held that the statute precluded any attempt for damages limitation at common law and that due process was not violated in denying the defendants the right to proceed under a common-law theory.[47]

The seat belt law at issue in *Thompson* effectively abrogated common-law negligence in favor of the statutory provision. Here, Wysocki essentially contends that this Court should ignore its holding in *Thompson* and allow him to assert a claim at common law rather than following the plain language of the intoxication statute that specifically allows intoxication being fifty percent or more the cause of injuries to be an "absolute bar" to recovery. We decline to adopt such an approach and instead adhere to the reasoning of *Thompson*.

---

[44] *Thompson v Fitzpatrick*, 199 Mich App 5, 6-7; 501 NW2d 172 (1993).

[45] *Id.* at 6.

[46] *Id.*

[47] *Id.*

We note that *Thompson* also concluded that the seat belt statute did not violate due process or equal protection when it limited damages reduction to five percent, regardless of the amount of fault for a plaintiff's injuries caused by his failure to wear a seat belt.[48] In *Ullery v Sobie*,[49] the trial court found that the plaintiff was sixty percent responsible for her injuries and that failure to wear a seat belt was about ten percent the cause of that sixty percent.[50] This Court employed a rational basis test to determine that the statute did not violate due process.[51] This Court also used a rational basis test to hold that the statute did not violate equal protection because there was a rational reason to differentiate between defendants who were sued by those wearing seat belts and those who were not.[52]

The case here is analogous to *Thompson* and *Ullery*. In both of those cases, this Court upheld statutes that abrogated common-law comparative negligence: as a defense in the former, and as a cause of action in the latter. In those cases, this Court analyzed changes to the tort system as socioeconomic legislation using the rational basis test. In our view, imposing an absolute bar to recovery when Wysocki's intoxication was fifty percent or more the cause of his injuries is rationally related to the legitimate government objective of allocating tort responsibility more heavily on those who are at fault. Therefore, we conclude that the jury instruction should not have

[48] *Id.* at 6-7.

[49] *Ullery v Sobie*, 196 Mich App 76; 492 NW2d 739 (1992).

[50] *Id.* at 78-79.

[51] *Id.* at 80-81.

[52] *Id.* at 81.

considered fault and did not violate Wysocki's due process rights.

Wysocki further argues that the statutes of the 1995 tort reform package are *in pari materia* and must be read together as one law.[53] The goal of judicial interpretation of conflicting statutes is to determine and effectuate the intent of the Legislature.[54] Therefore, Wysocki asserts that the intoxication statute should be interpreted to require only comparative fault. However, in our opinion, Wysocki wrongly identifies the topic about which the statutes are *in pari materia*.

The statutes are *in pari materia*; they relate to the same topic. However, that topic is the reduction of civil liability. The statutes should be read together to carry out the legislative intent to limit civil liability of some defendants under certain circumstances and to increase the significance of some plaintiffs' actions under certain circumstances. While the enactments, for the most part, are indicative of a comparative fault system, rather clearly the Legislature intended to exclude intoxicated or drug-affected plaintiffs from that comparative fault system if their fault was more than fifty percent the cause of their injuries, in the same way as it excluded unbelted drivers from that system. We conclude, therefore, that Wysocki was not denied due process and that the intoxication statute cannot be interpreted in a manner that preserves his claim that jury instructions on the issue of fault should be limited to comparative fault.

---

[53] *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998).

[54] *People v Morey*, 461 Mich 325, 329-330; 603 NW2d 250 (1999).

### IV. EQUAL PROTECTION

#### A. WYSOCKI'S POSITION

Wysocki argues that jury instructions based on the intoxication statute violate the Equal Protection Clauses of the United States and Michigan Constitutions. He contends that there are two specific categories of similarly situated individuals, both of whom have the common element of having a diminished ability to react. According to Wysocki, the first category consists of those individuals who have a diminished ability to react because of the consumption of alcohol or drugs. He contends that the second category consists of those who have a diminished ability to react for whatever other reason (for example, distraction, physical tiredness, mental tiredness, or generally failing to use due care for their own safety). Wysocki argues that there is no legal reasoning "that can support the absolute defense in [the intoxication statute] as it pertains solely to those individuals who have a diminished ability to react due to alcohol or drugs, while other similarly situated claimants escape this same absolute defense." As we have already noted, Wysocki argues that the "substantial relationship" test is the proper level of scrutiny.

#### B. LEGAL STANDARD

Wysocki asserts that his equal protection claim should be analyzed using the substantial relationship test because the right to recover for an injury is an important substantive right. Where no suspect class is involved, legislation must be sustained under an equal protection challenge if it is nonarbitrary and ration-

ally related to a legitimate government purpose.[55] Intoxicated tortfeasors have not yet been identified as a suspect class and we doubt that they ever will be. Suspect classes are those that have been subjected to a history of purposeful unequal treatment, or have been relegated to a position of political powerlessness requiring protection.[56] Intoxicated tortfeasors simply do not meet the classification requirements outlined by the United States Supreme Court. Therefore, in order to demand higher scrutiny, the law must interfere with a fundamental interest.[57]

However, as we have already noted, a plaintiff in Michigan does not have a fundamental interest in existing remedies, regardless of New Hampshire law. Further, this Court has applied the rational basis test to determine whether comparative negligence principles can be abrogated statutorily without offending equal protection.[58]

### C. "SIMILARLY SITUATED"

As we have already noted, Wysocki argues that plaintiffs whose ability to function was impaired, and whose impairment was fifty percent or more the cause of their injuries, are similarly situated whether their impairment was *due to alcohol or drugs* or due to factors *other* than alcohol and drugs. Therefore, barring the former from recovery, according to Wysocki, violates equal protection. We do not agree.

---

[55] *In re Parole of Franciosi*, 231 Mich App 607, 613-614; 586 NW2d 542 (1998).

[56] *San Antonio Independent School Dist, supra* at 28.

[57] *Sleet, supra* at 605-606.

[58] *Ullery, supra* at 81.

We first observe that intoxicated persons are treated differently than sober persons in many circumstances. For example, MCL 29.54 specifically states, "A person shall not handle an explosive while under the influence of intoxicating liquor or narcotic," while no similar provisions apply to sober persons. In another example, a sober driver who is involved in an automobile accident may be cited for a traffic offense, while an intoxicated driver who does the same act may be arrested for drunk driving.[59] Therefore, it cannot be said that voluntarily intoxicated plaintiffs who are equally or more the cause of their injuries are situated similarly to sober plaintiffs. Further, assuming that the two groups were similar, intoxicated people are not a protected class. The equal protection claim would still fail under a rational basis test because the intoxication statute is reasonably related to a legitimate government interest: increasing the responsibility of intoxicated or drug-influenced tortfeasors by reducing or barring their recovery.[60]

Equal protection does not require that people in different circumstances be treated the same.[61] Indeed, there is case law to support the contention that those who voluntarily become intoxicated are not subject to the same protections as those whose infirmity is created by means beyond their control. When dealing with an intoxicated plaintiff who fell down the stairs

---

[59] MCL 257.625.

[60] Other possible legitimate government interests of legislation similar to that at hand may include discouraging illegal drug use, see *People v Hunter*, 90 Mich App 1, 3; 282 NW2d 218 (1979), and encouraging temperance, see *People v Hoy*, 380 Mich 597, 604; 158 NW2d 436 (1968).

[61] *Weeks v Bd of Trustees, Detroit Retirement System*, 160 Mich App 81, 86-87; 408 NW2d 109 (1987).

at a tavern, the Michigan Supreme Court, before the
advent of current liquor law, held:

> [W]e have repeatedly held that one who is active in bring-
> ing about the intoxication may not recover for injuries
> resulting therefrom. The uniform holding in this jurisdiction
> has been that the civil damage provisions in the statute
> were for the benefit and protection of innocent parties
> only.[62]

*    *    *

> It would be doing violence to the [then current] statute to
> construe it as providing for the intoxicated person a right of
> action for an injury caused by himself.[63]

We note that those who voluntarily become intoxi-
cated have historically been considered to have put
themselves, and others, at risk of injury. We further
note that other jurisdictions have followed the rea-
soning that intoxicated persons should be limited or
barred from recovery under state dramshop acts.[64] We
conclude that neither logic nor the law requires that
plaintiffs whose ability to function was impaired, and
whose impairment was fifty percent or more the
cause of their injuries, be considered similarly situ-
ated whether their impairment was *due to alcohol or
drugs* or due to factors *other* than alcohol and drugs.

Wysocki also argues, essentially, that forty-nine per-
cent and fifty percent are "similarly situated" on the
spectrum of comparative negligence. He fails to rec-

---

[62] *Malone v Lambrecht*, 305 Mich 58, 60; 8 NW2d 910 (1943).

[63] *Id.* at 62.

[64] See, generally, *Reget v Bell*, 77 Ill 593 (1875); *Engleken v Hilger*, 43
Iowa 563 (1876); *Sworski v Colman*, 204 Minn 474; 283 NW 778 (1939),
overruled on other grounds *Strobel v Chicago, R I & P R Co*, 255 Minn
201; 96 NW2d 195 (1959).

ognize that, inevitably, some degree of arbitrariness is required to facilitate efficient legislation.[65] However, under the appropriate rational basis test, if any set of facts is known or can be reasonably conceived to validate the discrimination, then a rational basis for the legislation exists.[66] A rationally based classification need not be precise in its classifications, nor is it void because it results in some unfairness.[67]

It is certainly conceivable—indeed, it may be likely—that voluntarily intoxicated plaintiffs whose intoxication is fifty percent or more the cause of their injuries (in other words, whose intoxication was more the cause of the injuries than any other cause) may be deterred from intoxication and injury if they are barred from recovery. Therefore, while the precision with which the line is drawn may appear somewhat arbitrary, it is reasonably related to the legitimate government interest of allocating responsibility and preventing injury. It is thus not violative of equal protection.

## V. THE STANDARD JURY INSTRUCTION: "A" VERSUS "THE" CAUSE

Wysocki asserts that the jury instruction based on the intoxication statute violates due process by using the term "the" instead of "a." He notes that SJI2d 15.01, which contains the general definition of proximate cause, states:

> When I use the words "proximate cause" I mean first, that the negligent conduct must have been *a* cause of plaintiff's injury, and second, that the plaintiff's injury must have

---

[65] *Alexander, supra* at 12.

[66] *Crego v Coleman*, 463 Mich 248, 259-260; 615 NW2d 218 (2000).

[67] *Id.* at 260.

been *a* natural and probable result of the negligent conduct.[68]

Wysocki further notes that SJI2d 15.03 states:

> There may be more than one proximate cause. To be *a* proximate cause, the claimed negligence need not be the only cause nor the last cause. A cause may be proximate although it and another cause act at the same time or in a combination to produce the occurrence.[69]

By contrast, the actual jury verdict form at issue here mirrors the intoxication statute and refers only to "the" cause of the incident rather than "a" cause:

> Was the Plaintiff's impaired ability due to the influence of intoxicating liquors [fifty percent] or more *the* cause of the accident that the Plaintiff claims resulted in his injury . . . . If your answer is yes, do not answer any further questions.[70]

This language tracks the language of the intoxication statute, which provides in part:

> It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was [fifty percent] or more *the* cause of the accident or event that resulted in the death or injury.[71]

We first note that the standard jury instructions on which Wysocki relies are based on negligence arising

---

[68] Emphasis supplied.

[69] Emphasis supplied.

[70] Emphasis supplied.

[71] MCL 600.2955a(1) (emphasis supplied).

under common-law comparative negligence principles rather than under statute. We conclude that the Legislature may, subject to rational basis scrutiny, abrogate common-law comparative negligence. Further, as we have already discussed, the intoxication statute does not violate equal protection or due process. Rather self-evidently, jury instructions based on that statute also withstand constitutional scrutiny. We further conclude that the jury instruction did not deny Wysocki due process or equal protection. The instruction was an exact reflection of the law, abrogating comparative negligence. Wysocki's actions were wholly covered under the intoxication statute and, therefore, he was not entitled to the comparative negligence instructions.

### IV. RIGHT TO JURY TRIAL

Wysocki argues that he was denied his right to a jury trial because the jury was prevented from deciding further issues of fault after it determined him to be fifty percent or more the cause of his injuries. However, as outlined above, further instructions regarding comparative fault were not required because, by operation of the intoxication statute, they were rendered moot. The intoxication statute abrogates common-law comparative negligence and bars any recovery by Wysocki. Regardless of the percentage of *defendant's* negligence, if that percentage was under fifty percent the cause of Wysocki's injuries, it is irrelevant under the intoxication statute. A defendant's negligence would only be useful in determining proportional fault if a plaintiff's intoxication was less than fifty percent the cause of the accident and the

plaintiff was, therefore, allowed limited recovery under the intoxication statute.

Wysocki also argues that he was denied his right to a jury trial because the jury was not required to determine damages and comparative fault after initially deciding that he had no cause for recovery under the statute because of his intoxication. We disagree. We observe that Wysocki received a jury trial. The jury first determined that he was intoxicated and then at least fifty percent responsible for his injuries. We conclude that, necessarily, Wysocki had no damages and comparative fault was not an issue.

Affirmed.