*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* RYAN DOUGLAS HARDER.

RYAN DOUGLAS HARDER,

Petitioner-Appellant,

v

STATE OF MICHIGAN,

Respondent-Appellee.

FOR PUBLICATION
March 14, 2025
11:47 AM

No. 368645
Ottawa Circuit Court
LC No. 23-007346-PZ

Before: SWARTZLE, P.J., and K. F. KELLY and MURRAY, JJ.

K. F. KELLY, J.

Petitioner appeals by right the trial court's order denying his petition to be relieved of the requirement to register with the Michigan sex offender registry under the Sex Offenders Registration Act (SORA), MCL 28.721 *et seq.* Respondent was convicted by an Iowa court of committing lascivious acts with a child, contrary to Iowa Code § 709.8. This case presents the question of whether respondent's release from registry requirements in Iowa comes with a corresponding requirement that respondent be relieved of his registry requirements in Michigan. Because we conclude that it does not, we affirm the trial court's order.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In approximately 2007 or 2008—the exact date is not apparent in the record—respondent traveled to Iowa for a hunting trip. While patronizing the bar at the hotel he was staying at, respondent met the victim, a 15-year-old girl. Respondent and the victim had sexual intercourse, and respondent claimed he did not know her true age until afterwards. Petitioner was arrested within days of the encounter.

-1-

On January 12, 2009, petitioner was convicted by an Iowa court of lascivious acts with a child under Iowa Code § 709.8(3).[1] Petitioner pleaded guilty and was not incarcerated, but rather served a sentence of probation in the state of Michigan until he was released on January 12, 2012. Petitioner later filed a petition, along with letters of support from his sentencing judge, prosecuting attorney, investigating officer, and original probation officer in Iowa district court in an effort to be relieved of that state's requirements for sex offender registration. On December 11, 2017, the Iowa district court entered an order granting the petition and allowing for petitioner to be removed from Iowa's sex offender registry.

On July 13, 2023, petitioner filed a petition for removal from Michigan's sex offender registry. Petitioner explained that he was initially required to register under MCL 28.723(1)(d) because he was subject to registration in another state but argued that he was no longer required to register in Michigan because he was no longer required to register in Iowa. Petitioner also asserted that he was not required to register as a Tier-II offender, see MCL 28.722(t)(*xiii*), on the ground that there was no Michigan crime that was substantially similar to the crime underlying his Iowa conviction. Finally, petitioner asserted that requiring his continued registration with the Michigan sex offender registry violated the Full Faith and Credit Clause of the United States Constitution, the Equal Protection Clause of the United States Constitution, and his right against cruel or unusual punishment under the Michigan Constitution.

At the hearing on the petition, petitioner explained that his successful campaign to be removed from the Iowa registry had received support from the Iowa authorities involved in that conviction. The prosecution argued that petitioner should not be removed from the Michigan sex offender registry because he still had a sex-crime conviction on his record and that only an expungement of petitioner's conviction, not mere removal from the Iowa registry, would entitle him to removal from the Michigan registry. At the end of the hearing, the trial court took the petition under advisement.

On October 26, 2023, the trial court entered an opinion and order denying the petition. The court concluded that petitioner was required to register with the Michigan sex offender registry because he was convicted of a crime in Iowa that was substantially similar to a Michigan crime requiring registration in this state. The trial court noted that "substantially similar" is not defined under SORA and, after consulting a dictionary, stated that " 'substantial' means 'being largely but not wholly that which is specified,' while 'similar' means 'having characteristics in common; alike in substance or essentials,' with synonyms including 'comparable,' 'alike,' 'analogous, and 'resembling.' " The trial court determined that the crime underlying petitioner's Iowa conviction, lascivious acts with a child, was substantially similar to the Michigan crime of accosting a child for immoral purposes, MCL 750.145a, thus requiring petitioner to register under SORA.

The court also held that the Full Faith and Credit Clause does not require a Michigan court to remove petitioner from Michigan's sex offender registry because, although Michigan courts must recognize the validity of Iowa judgments, Michigan law and courts, not Iowa's, determine

---

[1] Petitioner was convicted under a predecessor version of the statute, Iowa Code § 709.8, as amended by Iowa Acts 2005 (81 GA) ch 158. There are no substantive differences between the two versions of the statute.

who is subject to Michigan's SORA requirements. Finally, in a combined analysis, the trial court determined that petitioner was not subjected to cruel or unusual punishment, or equal-protection violations, because this Court has held that sex offender registration did not constitute criminal punishment. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews de novo constitutional issues and questions of statutory interpretation." *People v Wiley*, 324 Mich App 130, 150; 919 NW2d 802 (2018). The goal of statutory interpretation "is to give effect to the Legislature's intent, focusing first on the statute's plain language." *People v Pinkney*, 501 Mich 259, 268; 912 NW2d 535 (2018). "In every case requiring statutory interpretation, we seek to discern the ordinary meaning of the language in the context of the statute as a whole." *People v Allen*, 507 Mich 597, 604; 968 NW2d 532 (2021). "When a word or phrase is not defined by the statute in question, it is appropriate to consult dictionary definitions to determine the plain and ordinary meaning of the word or phrase." *People v Rea*, 500 Mich 422, 428; 902 NW2d 362 (2017).

"Statutes are presumed to be constitutional unless their unconstitutionality is readily apparent. A party challenging the constitutionality of a statute has the burden of proving its unconstitutionality." *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004) (citation omitted). "A party challenging the facial validity of a statute must show that no circumstances exist under which it would be valid." *Id*. This Court reviews de novo a challenge that a statute is void for vagueness when the challenge is not made under the First Amendment. *People v Dillon*, 296 Mich App 506, 510; 822 NW2d 611 (2012). "To evaluate a vagueness challenge, this Court must examine the entire text of the statute and give the words of the statute their ordinary meanings." *People v Hrlic*, 277 Mich App 260, 263; 744 NW2d 221 (2007).

## III. ANALYSIS

### A. SUBSTANTIALLY SIMILAR OFFENSE

Petitioner first argues that the trial court erred when it denied his petition because he was not convicted of a crime that is substantially similar to a Michigan crime. Thus, petitioner argues that under MCL 28.722, he is not required to register under Michigan's reporting regime. We disagree.

Petitioner's Iowa conviction required him to register as a Tier-II offender. MCL 28.723, in pertinent part, states as follows:

> (1) Subject to subsection (2), the following individuals who are domiciled or temporarily reside in this state or who work with or without compensation or are students in this state are required to be registered under this act:
>
> (a) An individual who is convicted of a listed offense after October 1, 1995.
>
> * * *

-3-

(d) An individual from another state who is required to register or otherwise be identified as a sex or child offender or predator under a comparable statute of that state.

Under MCL 28.722,

(t) "Tier II offense" means 1 or more of the following:

(*i*) A violation of section 145a of the Michigan penal code, 1931 PA 328, MCL 750.145a.

\* \* \*

(*xiii*) An offense substantially similar to an offense described in subparagraphs (*i*) to (*xii*) under a law of the United States that is specifically enumerated in 34 USC 20911, under a law of any state or any country, or under tribal or military law.

There is no dispute that petitioner was convicted of an offense committed after October 1, 1995. The trial court determined that petitioner was a Tier-II offender because he was convicted of an offense, lascivious acts with a child, Iowa Code § 709.8, that is substantially similar to accosting a minor for immoral purposes, MCL 750.145a, which is listed as a Tier-II offense under MCL 28.722(t)(*i*). Tier-II offenders are required to register under SORA for 25 years. MCL 28.725(12).

When petitioner was convicted of lascivious acts with a child, Iowa Code § 709.8 stated:[2]

It is unlawful for any person sixteen years of age or older to perform any of the following acts with a child with or without the child's consent unless married to each other, for the purpose of arousing or satisfying the sexual desires of either of them:

1. Fondle or touch the pubes or genitals of a child.

2. Permit or cause a child to fondle or touch the person's genitals or pubes.

3. Solicit a child to engage in a sex act or solicit a person to arrange a sex act with a child.

4. Inflict pain or discomfort upon a child or permit a child to inflict pain or discomfort on the person.

---

[2] The current version of the statute does not have any substantive differences from the 2005 amendments. Petitioner's crime of conviction is currently codified as Iowa Code § 709.8(1)(d).

Any person who violates a provision of this section involving an act included in subsection 1 or 2 shall, upon conviction, be guilty of a class "C" felony. [Iowa Code § 709.8, as amended by Iowa Acts 2005 (81 GA) ch 158.]

In *State v Propp*, 532 NW2d 784, 786 (Iowa, 1995), the Iowa Supreme Court set forth the elements of § 790.8(3) as: (1) the defendant, with or without consent, solicited the victim to engage in a sex act; (2) the defendant intended to arouse or satisfy sexual desires; (3) the defendant was at least of the statutorily specified age (now 16 years); (4) the victim was under the statutorily specified age (now simply "a child"); and (5) the defendant and victim were not presently married. *Id*. In the context of § 790.8(3), "solicitation" takes place when one " 'commands, entreats, or otherwise attempts to persuade another . . . .' " *Propp*, 532 NW2d at 786, quoting Iowa Code § 705.1.

MCL 750.145a similarly states:

A person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse or an act of gross indecency, or to any other act of depravity or delinquency, or who encourages a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age to engage in any of those acts is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $4,000.00, or both.

MCL 750.145a contains alternative elements because the crime can be committed by accosting, enticing, or soliciting a child with intent to induce or force the child to commit a proscribed act, or by encouraging a child to commit a prescribed act. *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011). The prosecution may secure a conviction under MCL 750.145a by proving that the defendant "(1) accosted, enticed, or solicited (2) a child (or an individual whom the defendant believed to be a child) (3) with the intent to induce or force that child to commit (4) a proscribed act." *Kowalski*, 489 Mich at 499. The prosecution may alternatively prove that the defendant "(1) encouraged (2) a child (or an individual whom the defendant believed to be a child) (3) to commit (4) a proscribed act." *Id.*

Petitioner advocates using the "categorical approach" to determine whether two crimes are substantially similar for purposes of SORA. Under the categorical approach, a court may not consider the actual facts of the defendant's conduct underlying the crime. *Descamps v United States*, 570 US 254, 261; 133 S Ct 2276; 86 L Ed 2d 438 (2013). Rather, the court must compare the elements of the two crimes. *Id*. If a state-law crime allows for a conviction of a broader category of conduct than could support a conviction under the elements of the generic crime, then the two crimes are not alike under the categorical approach. *Id*. However, if a state-law conviction

-5-

could be sustained under the generic crime and the state statute contains a smaller category of conduct than the generic crime, then the two crimes are alike. *Id*.

Petitioner contends that Michigan should adopt a strict categorical approach to comparing crimes as the United States Court of Appeals for the Sixth Circuit outlined in *United States v Barcus*, 892 F3d 228 (CA 6, 2018).[3] In that case, the defendant pleaded guilty in a Tennessee court to attempted aggravated sexual battery against a victim under 13 years old. *Id*. After a subsequent federal failure-to-register conviction, the issue arose whether the defendant was properly categorized as a Tier-III sex offender under the federal Sex Offender Registration and Notification Act (SORNA), 34 USC 20901 *et seq.*, on the basis that his original Tennessee conviction was of a crime that penalized a broader range of conduct than its federal counterpart under SORNA that conferred Tier-III status. *Id*. at 231. The Sixth Circuit held that employing the categorical approach was the proper test for answering the question. *Id*. at 232. Accordingly, the defendant could be classified as a Tier-III offender if the Tennessee crime penalized identical or lesser categories of conduct, but not more, than did the federal crime. *Id*. The Tennessee crime at issue did not include an element of specific intent; rather, it employed an objective test that called on the jury to determine whether the touching that took place was of the sort that would ordinarily be considered sexual in nature. *Id*. In contrast, the corresponding federal crime required the prosecution to prove the defendant's sexual intent. *Id*. The Sixth Circuit held that the two crimes were not similar and, therefore, the defendant's Tennessee conviction could not support Tier-III status under SORNA. *Id*. The court reasoned that, under the Tennessee statute, a person could be convicted who lacked specific sexual intent, so long as the conduct could be objectively characterized as sexual, whereas the federal statute, by having a specific-intent element, required the higher quantum of proof. *Id*. at 233. The Tennessee statute therefore covered broader conduct than did the federal statute. *Id*. Accordingly, the offenses were not alike under the categorical approach and the defendant could not properly be categorized as a Tier-III offender. *Id*.

Neither this Court nor the Michigan Supreme Court have considered what approach should be employed to determine whether an out-of-state conviction is substantially similar to a Michigan offense for purposes of SORA registration. In this case, it would lead to an absurd result to enforce a strictly categorical approach for determining what crimes under SORA are substantially similar. Iowa Code § 709.8 does not apply when the defendant and victim are married, whereas MCL 750.145a does not provide a marriage exception. Therefore, MCL 750.145a covers broader conduct than does Iowa Code § 709.8. Accordingly, under a strictly categorical approach such as that endorsed by *Barcus*, no Michigan crime could ever be substantially similar to Iowa Code § 709.8 unless it contained a marriage exception. Presumably, the Legislature did not intend to shield sex offenders from registration requirements on the basis of an arbitrary provision in a statute, such as one recognizing child marriage.

In an analogous context, in *People v Crews*, 299 Mich App 381, 388; 829 NW2d 898 (2013), this Court addressed how courts are to decide whether a Michigan crime corresponds to the crime of another state for the purpose of scoring prior record variables during criminal

---

[3] "Although lower federal court decisions may be persuasive, they are not binding on state courts." *Abela v Gen Motors Corp*, 469 Mich 603, 607; 677 NW2d 325 (2004).

sentencing. MCL 777.51(2)(b) requires that a defendant be assessed points for a felony conviction "under a law of the United States or another state corresponding to a crime listed in offense class M2, A, B, C, or D." Specifically, we considered whether Ohio's second-degree burglary statute, Ohio Rev Code Ann 2911.12(A)(2), corresponded with Michigan's home-invasion statute, MCL 750.110a. *Id.* at 392. Taking the plain definition of the terms, the Court determined that "correspond" is defined as "similar or analogous." *Id.* at 391.

Applying that definition, the Court first noted that the Legislature's intent to proscribe the same broad category of conduct as that covered by the out-of-state statute is insufficient to find that two crimes correspond and held that the elements of the two offenses must be compared. *Id.* at 392. We concluded that "[t]he plain meaning of 'correspond' does not require statutes to mirror each other under all circumstances; rather, it requires only that statutes be analogous or similar, meaning that they have 'qualities in common.' " *Id.* at 396. We explained:

> Different states often have analogous laws describing essentially the same crime(s), while the specific statutory language used to define those crimes often differs from state to state. Requiring that the offenses match or agree almost exactly would contravene the apparent intent of the Legislature, which is to permit scoring of all convictions for offenses in the listed classes and any analogous offenses committed in another state. Clearly, the goal of the "corresponding" requirement is to ensure that convictions for out-of-state crimes and in-state crimes under statutes that seek to prevent the same harm are scored in the same category. Thus, the Legislature could not have intended that minor differences between the wording of a Michigan criminal statute and its analog in a different state would result in the out-of-state conviction's not being counted as a prior offense if the two statutes address the same type of conduct. [*Id.* at 391.]

Petitioner asserts that the two offenses are not substantially similar because there is no specific-intent requirement to the Iowa offense. We find this argument unpersuasive, however, because the Court of Appeals of Iowa has treated the crime of lascivious acts with a child as a specific-intent crime. *State v Kingery*, 924 NW2d 533 (Iowa App, 2018) (table, unpublished disposition); 2018 WL 3650352 at *3. The specific-intent element of that crime is plain from the elements. The prosecution must prove an intent to arouse or satisfy sexual desires. Iowa Code § 709.8. In Michigan, a conviction of accosting a minor for immoral purposes requires proof that the defendant intended "to induce or force that child to commit" a proscribed act. *Kowalski*, 489 Mich at 499.

The statutes are substantially similar because all of the material elements of the crimes correspond. The elements of solicitation common to the two offenses are similar, as are the elements that the victim be a child and the defendant an adult. That the solicitation must be to engage in a sex act under the Iowa Code also corresponds to solicitation of "an immoral act," "an act of sexual intercourse," "an act of gross indecency," or "any other act of depravity or delinquency" under MCL 750.145a. Therefore, the elements are substantially similar for purposes of SORA.

It is implausible that the Legislature intended to shield from sex offender registration someone who has solicited sex acts from a child on the basis that the state in which the crime was committed still allowed child marriage. If under the Iowa statute petitioner and his victim were, in fact, married, petitioner would not have faced conviction, and there would be no offense to compare with a Michigan crime. It follows that slight variations in other elements do not relieve a person convicted as a sex offender in another state from registration requirements when the substance of the Michigan and out-of-state offenses is substantially the same. Moreover, petitioner has not shown that the categorical approach to comparing crimes for purposes of SORNA, as adopted by the Sixth Circuit in *Barcus*, is based on a constitutional imperative. Rather, it appears that the strictly categorical approach is simply what is favored by federal courts. See *Descamps*, 570 US at 267, citing *Taylor v United States*, 495 US 575, 600-601; 110 S Ct 2143; 109 L Ed 2d 607 (1990); *Barcus*, 892 F3d at 232, citing *United States v White*, 782 F3d 1118, 1132-1134 (CA 10, 2015). Therefore, a person such as petitioner who is convicted of lascivious acts with a child under Iowa Code § 709.8 is subject to sex offender registration requirements as a Tier-II offender in Michigan, and the trial court did not err when it determined that Iowa's statute concerning lascivious acts with a child, Iowa Code § 709.8(3), and Michigan's accosting a minor for immoral purposes, MCL 750.145a, are substantially similar.

## B. FULL FAITH AND CREDIT

Next, petitioner argues that he should be removed from the Michigan sex offender registry under the Full Faith and Credit Clause and the Uniform Enforcement of Foreign Judgments Act, MCL 691.1171 *et seq.* According to petitioner, once the Iowa courts ordered him removed from the Iowa sex offender registry, those constitutional and statutory provisions required that he be removed from the Michigan registry as well. We disagree.

The Full Faith and Credit Clause of the United States Constitution, US Const, art 4, § 1, requires the courts of each state to honor the actions of another state's courts. *Blackburne & Brown Mtg Co v Ziomek*, 264 Mich App 615, 620; 692 NW2d 388 (2004). Under US Const, art 4, § 1,

> Full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state. And the Congress may by general laws prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof.

"A judgment entered in another state is presumptively valid and subject to recognition in Michigan under the Full Faith and Credit Clause, which requires that a foreign judgment be given the same effect that it has in the state of its rendition." *Hare v Starr Commonwealth Corp*, 291 Mich App 206, 215-216; 813 NW2d 752 (2011) (quotation marks, citations, and alteration brackets omitted). "The purpose of the Full Faith and Credit Clause is to prevent the litigation of issues in one state that have already been decided in another." *LME v ARS*, 261 Mich App 273, 285; 680 NW2d 902 (2004) (quotation marks and citation omitted). Typically, only a jurisdictional defect will allow a court to entertain a collateral attack on a court order from another state. *Blackburne & Brown Mtg Co*, 264 Mich App at 621.

Michigan has codified the requirements of the Full Faith and Credit Clause under the Uniform Enforcement of Foreign Judgments Act. MCL 691.1172 defines "foreign judgment" as "any judgment, decree, or order of a court of the United States or of any other court that is entitled to full faith and credit in this state."

> A copy of a foreign judgment authenticated in accordance with an act of congress or the laws of this state may be filed in the office of the clerk of the circuit court, the district court, or a municipal court of this state. The clerk shall treat the foreign judgment in the same manner as a judgment of the circuit court, the district court, or a municipal court of this state. A judgment filed under this act has the same effect and is subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a judgment of the circuit court, the district court, or a municipal court of this state and may be enforced or satisfied in like manner. [MCL 691.1173.]

A foreign judgment "is treated as a Michigan judgment and Michigan law applies to its enforcement." *Peabody v DiMeglio*, 306 Mich App 397, 404; 856 NW2d 245 (2014). However, the United States Supreme Court has explained that states are not required to "adopt the practices of other States regarding the time, manner, and mechanisms for enforcing judgments," because "[e]nforcement measures do not travel with the sister state judgment as preclusive effects do" even as "such measures remain subject to the evenhanded control of forum law." *Baker v Gen Motors Corp*, 522 US 222, 235; 118 S Ct 657; 139 L Ed 2d 580 (1998).

Petitioner argues that, once he was relieved of the requirement to register with Iowa's sex offender registry, the order entered by the Iowa court to that effect precluded Michigan from requiring petitioner to continue to register with the Michigan registry. This argument is unavailing, however, because the two registration requirements are independent of one another. Although a person may be required to register with Michigan's sex offender registry on the basis of being required to register with another state's sex offender registry, see MCL 28.723(1)(d); MCL 28.724(6)(d), petitioner was required to register in Michigan under MCL 28.723(1)(d), because he has been domiciled in Michigan and was convicted of a listed offense. In other words, petitioner's sex offender registration requirement in Michigan stems from his *Iowa conviction* and not his *Iowa registration requirement*.

Despite that both registration requirements stemmed from the Iowa conviction, petitioner faced separate registration requirements in each state. A Michigan court must, absent a jurisdictional defect, recognize as valid the Iowa criminal judgment entered against petitioner. Michigan must also recognize the Iowa order removing petitioner from that state's sex offender registry. Moreover, under the Full Faith and Credit Clause, a Michigan court may not modify a determination of an Iowa court regarding that state's sex offender registry requirements, just as an Iowa court may not modify a determination of a Michigan court regarding this state's sex offender registry.

The Iowa judgment against petitioner and his registry obligation in that state followed him into Michigan. However, under *Baker*, 522 US at 235, Iowa may not force Michigan to conform to that state's laws regarding the enforcement of that judgment. As a result of his Iowa conviction,

Michigan's SORA independently requires petitioner to register with the sex offender registry of this state. An Iowa court may not modify the terms or application of Michigan's SORA through a decision regarding the enforcement of Iowa's sex offender registry laws. Therefore, the trial court did not err when it denied the petition on the basis of the Full Faith and Credit Clause.

## C.  CRUEL OR UNUSUAL PUNISHMENT

Petitioner also argues that requiring him to remain subject to Michigan's SORA requirements violates the prohibition against cruel or unusual punishment. Petitioner contends that requiring him to report as a sex offender is excessively harsh considering the gravity of the offense and fails to advance the goals of rehabilitation. We disagree.

The United States Constitution prohibits "cruel and unusual" punishments. US Const, Am VIII. Similarly, the Michigan Constitution prohibits "cruel or unusual" punishments. 1963 Const, art 1, § 16. Michigan's prohibition of cruel *or* unusual punishment is considered to provide broader protections than the federal counterpart prohibiting cruel *and* unusual punishments. *People v Stovall*, 510 Mich 301, 314; 987 NW2d 85 (2022). Accordingly, if a sentence is constitutional under Michigan's standard, it is constitutional under the Eighth Amendment as well. *People v Costner*, 309 Mich App 220, 232; 870 NW2d 582 (2015).

The determination whether a statute imposes a cruel or unusual punishment involves a two-step inquiry. *People v Lymon*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164685); slip op at 9-10. The first assesses whether the statute imposes a criminal punishment as opposed to some civil regulatory burden. *Id*. If the statute imposes criminal punishment, then the second step is to determine whether the punishment is cruel or unusual. *Id*. The latter inquiry concerns whether the punishment is so "grossly disproportionate" that it is unconstitutional. *People v Bullock*, 440 Mich 15, 34 n 17; 485 NW2d 866 (1992).

Petitioner's challenge fails at the first step of the inquiry. In *People v Kiczenski*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 364957); slip op at 12, this Court determined that sex offender registration under the 2021 SORA amendments did not impose a criminal punishment on offenders convicted of sex-related offenses. In that case, the defendant was convicted of two counts of first-degree sexual conduct, MCL 750.520b(1)(d)(*ii*), and became subject to SORA's reporting requirements when they took effect in 1995. *Kiczenski*, ___ Mich App at ___; slip op at 1. After the defendant was released from prison, he filed a motion contending that the amendments to SORA constituted ex post facto punishment. *Id*. at ___; slip op at 2.

On appeal from the trial court's denial of his motion, this Court affirmed, explaining that considerations for determining whether a statute imposes a criminal punishment include:

> (1) whether the statute has historically been regarded as punishment; (2) whether the statute imposes an affirmative disability or restraint; (3) whether the statute promotes the traditional aims of punishment; (4) whether the statute has a rational connection to a nonpunitive purpose; and (5) whether the statute is excessive with respect to its nonpunitive purpose. [*Id*. at ___; slip op at 1 (quotation marks and citation omitted).]

The Court concluded that the first three factors generally weighed in favor of determining that registration under the 2021 SORA amendments constituted punishment. *Id*. at ___; slip op at 7-8. The Court next concluded that the fourth factor weighed strongly in favor of determining that sex offender registration was nonpunitive because it has a close connection with the legislative goal of providing for public safety by alerting members of the public to the location of sex offenders. *Id*. at ___; slip op at 8-9. Regarding the fifth factor, the Court concluded that sex offender registration for those who actually committed sex offenses was not excessive, reasoning that the sex offender label was then accurate, noted that the most onerous registration requirements—particularly the school-safety zones—had been repealed, and held that registration was reasonable in light of the legislative goal of promoting public safety. *Id*. at ___; slip op at 10-12. Weighing all the factors, this Court determined that sex offender registration under the 2021 SORA amendments does not impose a criminal punishment on sex offenders. *Id*. at ___; slip op at 12. Thus, the Court concluded that the defendant failed to carry the high burden of showing that the Legislature's intent to create a civil regulation was overcome by the punitive effects of the statute. *Id*.

Under *Kiczenski*, therefore, we are bound to conclude that petitioner's registration under SORA does not constitute cruel or unusual punishment, see MCR 7.215(C)(2), and the trial court did not err when it denied the petition on the basis that SORA imposed cruel or unusual punishment on petitioner.

### D. EQUAL PROTECTION

Petitioner also challenges his reporting requirements under SORA as a violation of his right to equal protection. Petitioner contends that he has a constitutional right to travel among the states, and the sex offender registration requirement infringes on his right to travel. Petitioner also argues that his right to equal protection was violated because petitioner does not have the same right to challenge his registration requirement as do other SORA registrants. We disagree.

"The Equal Protection Clauses of the United States and Michigan Constitutions provide that no person shall be denied the equal protection of the law." *Wysocki v Kivi*, 248 Mich App 346, 350; 639 NW2d 572 (2001).

> The essence of the Equal Protection Clauses is that the government not treat persons differently on account of certain, largely innate, characteristics that do not justify disparate treatment. Conversely, the Equal Protection Clauses do not prohibit disparate treatment with respect to individuals on account of other, presumably more genuinely differentiating, characteristics. [*Heidelberg Bldg, LLC v Dep't of Treasury*, 270 Mich App 12, 17; 714 NW2d 664 (2006) (citations omitted).]

"Generally speaking, legislation challenged on equal protection grounds is accorded a presumption of constitutionality . . . ." *Doe v Dep't of Social Servs*, 439 Mich 650, 662; 487 NW2d 166 (1992). "When reviewing the validity of state legislation or other official action that is challenged as denying equal protection, the threshold inquiry is whether plaintiff was treated differently from a similarly situated entity." *Shepherd Montessori Ctr Milan v Ann Arbor Charter Twp*, 486 Mich 311, 318; 783 NW2d 695 (2010). "To be considered similarly situated, the

challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects." *Lima Twp v Bateson*, 302 Mich App 483, 503; 838 NW2d 898 (2013) (quotation marks, citation, and ellipsis omitted).

"Courts examine three factors when determining whether a law violates the Equal Protection Clause: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." *Barrow v City of Detroit Election Comm'n*, 301 Mich App 404, 419; 836 NW2d 498 (2013). "In order to perform an equal protection analysis, we must first determine which constitutional test applies, strict scrutiny or the rational basis test." *Gilson v Dep't of Treasury*, 215 Mich App 43, 50; 544 NW2d 673 (1996). "When state legislation creates a classification scheme that is based on suspect factors, such as race, national origin, ethnicity or alienage, or that affects a fundamental interest, courts apply a high standard of review, labeled 'strict scrutiny.' " *Wysocki*, 248 Mich App at 351-352 (citations omitted). Under strict scrutiny, "the courts require the State to demonstrate that its classification has been precisely tailored and it must serve a compelling governmental interest." *Phillips v Mirac, Inc*, 470 Mich 415, 432; 685 NW2d 174 (2004).

"The 'traditional' or 'rational basis' test represents the other polar extreme. Under this standard, courts will not strike down a statute if the classification scheme it creates is rationally related to a legitimate governmental purpose." *Wysocki*, 248 Mich App at 353. "Under this deferential standard, the burden of showing a statute to be unconstitutional is on the challenging party, not on the party defending the statute." *Shepherd Montessori Ctr Milan*, 486 Mich at 319 (quotation marks and citation omitted). "The general rule is that legislation that treats similarly situated groups disparately is presumed valid and will be sustained if it passes the rational basis standard of review[.]" *Id.* at 318. "[A] classification will stand unless it is shown to be 'essentially arbitrary.' " *Wysocki*, 248 Mich App at 354.

Petitioner argues that SORA infringes on his right to travel. "The constitutional right to travel" concerns "the right of free interstate migration." *Attorney Gen of New York v Soto-Lopez*, 476 US 898, 902; 106 S Ct 2317; 90 L Ed 2d 899 (1986). "[T]he right to interstate travel is a fundamental right[.]" *Gilson*, 215 Mich App at 50. Accordingly, a statute affecting that right is reviewed under strict scrutiny. *Id.* "A state law implicates the right to travel when it actually deters travel, when impeding travel is its primary objective, or when it uses a classification that serves to penalize the exercise of the right." *Barrow*, 301 Mich App at 422. When reviewing a statute that implicates the right to travel, "[e]ven a compelling state interest may be served only by means which do not burden unnecessarily the exercise of the right to travel." *People v Lewis*, 107 Mich App 277, 282; 309 NW2d 234 (1981).

According to petitioner, his right to travel was infringed upon because, if he had moved to Michigan from Iowa after his Iowa sex offender registration requirement ended, as opposed to being a Michigan resident, he would not have been required to register with Michigan's sex offender registry. Therefore, petitioner argues, his equal-protection rights were violated because he was burdened with sex offender registration requirements in Michigan on the basis that he lived in Michigan rather than completing his Iowa registration requirement while living in Iowa.

We disagree that petitioner's right to travel was implicated in this case. Petitioner does not appear to have changed his domicile during, or following, any of the Iowa proceedings. According

to petitioner's testimony at the hearing on the petition, he has been a lifelong resident of west Michigan and immediately returned to the state after being arrested and posting bond in Iowa. Thereafter, petitioner spent time in Iowa for his court hearings. After his conviction, petitioner immediately returned to, and resided in, Michigan. Petitioner was allowed to serve his Iowa probation in Michigan, where he remained throughout the term. Petitioner has not explained how his sex offender registration requirements actually impacted any travel.

One basis for being required to register under SORA is that the person is domiciled or temporarily residing in Michigan and while required to register with another state's sex offender registry. MCL 28.723(1)(d); MCL 28.724(6)(d). However, that was never the sole basis under which petitioner was required to register under SORA in Michigan. Although those provisions applied to petitioner while he was actively required to register in Iowa, he has also always been required to register in Michigan under MCL 28.723(1)(d) as one domiciled in Michigan who was convicted of an offense in another state that was substantially similar to a Michigan offense requiring registration. Under the circumstances, the record does not show that Michigan's sex offender registration requirements ever affected petitioner's interstate travel. Any potential equal-protection violations regarding how SORA might infringe on the right to travel are only matter of speculation. Accordingly, petitioner is not entitled to relief on this basis.

Finally, petitioner argues that his equal-protection rights were violated because he did not have a statutory right to directly petition for removal from the sex offender registry. According to petitioner, SORA violates the Equal Protection Clauses because only Tier-I and juvenile offenders, but not Tier-II or Tier-III offenders, have a right to petition for removal. Under MCL 28.728c(1), a Tier-I offender may petition for removal 10 years after being released from confinement if that person meets certain criteria, including having not committed any new felonies or sex offenses, having successfully completed any period of probation or parole, and having successfully completed a sex offender treatment program. Under MCL 28.728c(3), certain juvenile sex offenders may petition for removal if they fall into particular categories regarding age and the severity of their offenses.

Because the registry's tier-classification system is not based on a suspect classification regime, rational basis is the appropriate standard of review for petitioner's challenge. See *Wysocki*, 248 Mich App at 353. Accordingly, the system passes constitutional muster unless the classifications are deemed arbitrary. *Id*. at 354. Petitioner argues that his inability to petition for removal from the sex offender registry—when he allegedly has completed all the requirements that would allow him to do so if he were a Tier-I offender—means that he is not given the same opportunities as other similarly situated offenders. But petitioner has not established that he is similarly situated to those who may petition for removal, and therefore he has not exposed any arbitrariness in the tier-classification regime.

Offenders are placed into tiers solely on the basis of the seriousness of their offenses. Classifying offenders on the basis of the seriousness of their offenses in order to require longer registration periods for those who committed more serious crimes has a reasonable basis relating to alerting the public to potential dangers. The societal imperative of preventing sex crimes, and addressing it by alerting the public to potentially dangerous individuals, presents a practical problem that justifies rough accommodations, even ones that appear less than scientific. See

*Dandridge v Williams*, 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970). It is reasonable for the Legislature to draw lines regarding the length of reporting requirements, including who may petition for early removal, to further the goals of rehabilitation and public safety. A classification system based on the seriousness of offenses does not amount to the type of arbitrary classification that violates equal protection. Although the lines drawn by the Legislature may look arbitrary in certain applications, it does not follow that the drawing of the lines fails rational basis review. The Legislature may draw a distinction between classes of persons so long as the classification is not "arbitrary or invidious," *Heidelberg Bldg LLC*, 270 Mich App at 17-18, and the classification scheme is rationally related to a legitimate governmental purpose, *Wysocki*, 248 Mich App at 353. To classify offenders, and prescribe registration requirements on the basis of the seriousness of the offense, is rationally related to a legitimate governmental purpose. See *Wysocki*, 248 Mich App at 353. Therefore, petitioner has not shown that SORA's petition process presents an equal-protection violation, and the trial court did not err when it denied petitioner's request to be removed from SORA's reporting regime.

## E.  UNPRESERVED CONSTITUTIONAL ISSUES

Petitioner also raises various constitutional challenges to his reporting requirement that were not raised in the trial court and are, therefore, not preserved for appeal. See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 294; 14 NW3d 472 (2023). Failure to properly preserve an issue for appeal results in waiver of that issue. *Id*. However, "[t]his Court may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented." *Id*. at 289-290 (quotation marks omitted). In this case, because the unpreserved issues present questions of law for which all necessary facts are presented, we will briefly address petitioner's unpreserved arguments.

Petitioner first contends that his Michigan sex offender registration requirement constitutes an ex post facto punishment in violation of US Const, art I, § 10, cl 1; Const 1963, art 1, § 10, because his Michigan requirement continues after his Iowa requirement has ended. "The critical question for an ex post facto violation is whether the law changes the legal consequences of acts completed before its effective date." *Wiley*, 324 Mich App at 152 (alteration brackets omitted). "A law is considered ex post facto if it: (1) punishes an act that was innocent when the act was committed; (2) makes an act a more serious criminal offense; (3) increases the punishment for a committed crime; or (4) allows the prosecution to convict on less evidence." *People v Betts*, 507 Mich 527, 542; 968 NW2d 497 (2021) (alteration brackets omitted). However, as discussed above, petitioner cannot show that his registration requirements under SORA were criminal punishment subjecting SORA to ex post facto analysis. See *Kiczenski*, ___ Mich App at ___; slip op at 12. Accordingly, this claim must fail.

Petitioner also argues that MCL 28.722(t)(*xiii*) is unconstitutionally vague. There are three grounds on which a statute may be determined unconstitutionally vague: "(1) it is overbroad, impinging on First Amendment freedoms, (2) it fails to provide fair notice of the conduct proscribed, or (3) it is so indefinite that it confers unlimited and unstructured discretion on the trier of fact to determine whether an offense has occurred." *Hrlic*, 277 Mich App at 263. "A vagueness challenge must be considered in light of the facts at issue." *Sands*, 261 Mich App at 161. "To

-14-

afford proper notice of the conduct proscribed, a statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *Hrlic*, 277 Mich App at 263 (quotation marks and citation omitted). "For a statute to be sufficiently definite, its meaning must be fairly ascertainable by reference to judicial interpretations, the common law, dictionaries, treatises, or the commonly accepted meanings of words." *Dillon*, 296 Mich App at 511.

Petitioner had fair notice that he could be subjected to Michigan's sex offender registry requirements before committing his offense. SORA provides fair notice that soliciting a minor for sex is an offense that requires registration. MCL 28.722(t)(*i*) clearly states that a conviction of a violation of MCL 750.145a leaves a Tier-II offender. Under MCL 750.145a, it is plain that one who solicits sex from a person under the age of 16 is guilty of a crime. MCL 28.722(t)(*xiii*) makes clear that someone who violates a law of another state that is substantially similar to MCL 750.145a is a Tier-II offender, and MCL 28.725(12), and that a Tier-II offender must register under SORA. Under the circumstances, it cannot reasonably be said that petitioner lacked fair notice that the conduct at issue would lead to sex offender registration in Michigan. Moreover, MCL 28.722(t)(*xiii*) did not grant the trial court unlimited or unstructured discretion to decide whether the two crimes are substantially similar. Rather, the court applied the statute on the basis of its plain language. MCL 28.722(t)(*xiii*) does not lend itself to more than one interpretation, let alone one that would allow a trial court to arbitrarily decide whether two crimes are substantially similar.

Finally, petitioner argues that the process by which he was required to register with the sex offender registry violated his due-process rights. "[D]ue process of law requires that deprivation of life, liberty, or property by adjudication must be preceded by notice and an opportunity to be heard. To comport with these procedural safeguards, the opportunity to be heard must be granted at a meaningful time and in a meaningful manner." *Bonner v Brighton*, 495 Mich 209, 235; 848 NW2d 380 (2014) (quotation marks and citation omitted). Although, presumably, the State Police initially determined that petitioner must register in Michigan on the basis of his Iowa conviction, petitioner's inability to participate in those "proceedings" ultimately did not prejudice him. See *Carines*, 460 Mich at 763. Petitioner was heard before a neutral body, the trial court, which did not merely rubberstamp the decision of the State Police, but rather conducted its own analysis considering whether lascivious acts with a child is substantially similar to accosting a child for immoral purposes, and correctly determined that the two crimes are, in fact, substantially similar such that petitioner is required to register on that basis.[4] Accordingly, petitioner's due-process claim fails as well.

---

[4] Plaintiff relies on *Does v Whitmer*, ___ F Supp 3d ___ (ED Mich 2024) (Case No. 22-cv-10209); slip op at 79-80, a case where the federal district court concluded that the process used to determine whether out-of-state offenders must register on the basis of having committed a substantially similar offense violated due process because the out-of-state offender has no notice or opportunity to be heard. While we acknowledge that *Does* came to the opposite conclusion than we do here, we are not bound by that decision, *Abela*, 469 Mich at 607, and as explained, ultimately disagree that plaintiff's due process rights were violated. Moreover, the reasoning in *Does* has already been rejected by this Court on other grounds. See *Kiczenski*, ___ Mich App at ___; slip op at 12-13 (disagreeing with *Does* that imposition of SORA constituted punishment for purposes of the ex

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

---

post facto analysis).  But even if we agreed with the reasoning in *Does*, as explained, plaintiff failed to show that the trial court committed plain error, and his challenge must therefore fail.